**GUTTENTAG, Appellant,**

v.

**ETNA TOWNSHIP BOARD OF ZONING APPEALS et al., Appellees.**

[Cite as *Guttentag v. Etna Twp. Bd. of Zoning Appeals,*
177 Ohio App.3d 53, 2008-Ohio-2642.]

Court of Appeals of Ohio,
Fifth District, Licking County.

Nos. 2007–CA–129, 2007–CA–130 and 2007–CA–131.

Decided June 2, 2008.

**54**

Jonathan A. Veley, for appellant.

Eric S. Fox, for appellee Etna Twp. Board of Zoning Appeals.

W. Scott Hayes, for appellee Freda M. Langel, Trustee.

Robert A. Meyer Jr. and Anthony R. McClure, for appellee Wal–Mart Stores, Inc.

---

GWIN, Presiding Judge.

{¶ 1} These are three appeals taken from three judgments of the Court of Common Pleas of Licking County, Ohio, consolidated by this court for purposes of this opinion. Previously, this court consolidated case Nos. 07–129 and 07–131 for oral argument.

{¶ 2} Gilbert Guttentag is the appellant in each case. In case Nos. 07–129 and 07–131, the trial court found that he lacks standing to bring an appeal from a decision of appellee Etna Township Board of Zoning Appeals because he had failed to participate in the prior proceedings. In case No. 07–130, the trial court found that Guttentag's appeal from a decision of the board of zoning appeals was untimely. The court dismissed all three appeals.

### The First Permit

{¶ 3} Intervenors-appellees Freda M. Langel, Trustee, William Langel, and Barbara Langel owned a parcel of land in Etna Township abutting State Route 310. Intervenor-appellee Wal–Mart Stores, Inc. contracted with the Langels to purchase the property to build a new Wal–Mart store. In February 2006, Wal–Mart and the Langels submitted an application for a zoning permit, which was issued in March 2006.

{¶ 4} Guttentag resides in a residential subdivision known as Cumberland Trail, which is on the opposite side of State Route 310. Guttentag's residence is more than 700 feet from the proposed development site.

{¶ 5} At some point, Wal–Mart decided to build a smaller store than it originally proposed for the March 2006 permit. In November 2006, the zoning inspector notified Wal–Mart and the Langels that the change required a new zoning permit. The Langels and Wal–Mart filed appeals of this determination to the board of zoning appeals.

{¶ 6} In January 2007, the zoning inspector determined that the original permit was invalid for a number of reasons and found that the permit could not be amended to cure the defects. The Langels and Wal–Mart filed a second appeal from this determination to the board of zoning appeals.

{¶ 7} On June 5, 2007, the board granted each of the appeals, finding that the zoning inspector should not have revoked the original permit and that it could be amended and modified for Wal–Mart's new plans.

{¶ 8} Guttentag filed two administrative appeals from these two decisions: Licking C.P. No. 07CV01128, our App. No. 07CA129; and C.P. No. 07CV01127, our App. No. 07CA131.

### The Second Permit

{¶ 9} While the proceedings on the first permit were pending, Wal–Mart and the Langels filed for and received a new zoning permit. Guttentag appealed to the board of zoning appeals, which scheduled an administrative hearing for April 16, 2007. At the hearing, the chairman of the board informed Guttentag that he lacked standing to prosecute the appeal and cancelled the hearing.

{¶ 10} On April 23, 2007, the chairman of the board sent Guttentag a letter advising him that he had a right to appeal the decision and notifying him that he had 30 days to file, beginning on April 16, 2007, the date of the aborted hearing.

{¶ 11} Guttentag then filed an administrative appeal from this decision of the Board, which is C.P. No. 07CV00664 and our App. No 07CA130. Guttentag also filed a separate suit alleging that the board's proceedings on April 16 violated the Ohio Sunshine Law. The Sunshine Law action was pending in the common pleas court at the time these other matters came before this court.

{¶ 12} Guttentag filed his notice of appeal from the board's April 16 decision with the court of common pleas, but did not file or serve a copy of the notice of appeal on the board. The Clerk of Courts for Licking County Common Pleas Court forwarded a copy of the notice by certified mail.

{¶ 13} On June 12, 2007, the board filed its motion to dismiss Guttentag's administrative appeal, and on June 28, 2007, intervenors Wal–Mart and the Langels filed a memorandum in support of the motion. On July 3, 2007, Guttentag served the board with a second notice of appeal. On October 1, 2007, the trial court granted the board's motion to dismiss on the grounds that Guttentag had failed to perfect his administrative appeal because he did not timely file the proper notice with the board.

{¶ 14} First we will address appeal No. 07CA130, dealing with the timeliness of the service of the notice of appeal from the proceedings regarding the second permit. In case number 07–130, Guttentag assigns three errors to the trial court:

{¶ 15} "I. Does a trial court err in determining that a township board of zoning appeals has made an 'entry of final order' when the township board of zoning appeals has not approved minutes of the action from which appellant appeals?

{¶ 16} "II. Does a trial court err in dismissing an administrative appeal when an appellant has properly filed with a township board of zoning appeals a notice of appeal, notwithstanding the lack of an entry of a final order?

{¶ 17} "Does a trial court err in determining that a notice of appeal has not been filed by the appellant with the board of zoning appeals, when the notice of appeal that was received by the board from this court by certified mail was filed by the board in the same manner as all notices of appeal filed with the board?"

## I, II, and III

{¶ 18} We will address all three assignments of error together.

{¶ 19} Guttentag argues that the record does not indicate that the board as a whole ever approved any minutes pertaining to April 16, 2007. It appears

that appellees do not contest this. Instead, the board argues that the letter from the chairman of the board on April 23 was a final, appealable order, abandoning its prior statement that the appeal time began to run on April 16 when the chairman announced his decision and cancelled the hearing.

{¶ 20} The current version of R.C. 2505.07 provides: "After the entry of a final order of an administrative officer, agency, board, department, tribunal, commission, or other instrumentality, the period of time within which the appeal should be perfected, unless otherwise provided by law, is 30 days."

{¶ 21} Prior to its 1986 amendment, R.C. 2505.07 stated: "After the journal entry of a final order, judgment or decree has been approved by the court in writing and filed with the clerk for journalization, or after the entry of other matters for review, the period of time within which appeal shall be perfected, unless otherwise provided by law, is as follows: * * * "

{¶ 22} The board argues that the letter was sufficient to constitute the entry of a final order. The board urges that the amendment to the statute removed references to a journal entry and journalization, and thus the statute now allows agencies the freedom to determine the finality of their orders. See *Centerville Bd. of Tax Appeals v. Wright* (1991), 72 Ohio App.3d 313, 594 N.E.2d 670.

{¶ 23} In *Snell v. Mt. Vernon Bd. of Zoning Appeals* (Dec. 18, 1995), Knox App. No. 95CA24, 1995 WL 808609, this court reviewed a case similar to the one at bar. In *Snell,* the board of zoning appeals announced its decision at a hearing on July 6, 1994, and confirmed its decision in a letter dated July 13, 1994. Snell conceded that he knew of the board's decision on or about July 13, 1994. On September 26, 1994, Snell filed a notice of appeal in the Court of Common Pleas of Knox County. On October 5, 1994, the board filed the minutes of the July 6, 1994 hearing. The trial court dismissed Snell's appeal as untimely.

{¶ 24} This court found that the minutes of the July 6, 1994 hearing was the critical document in determining the date on which the appeal time began to run. We found that the board's act of drawing up and signing the minutes constituted memorializing a final order for purposes of R.C. 2505.07. We rejected the board's argument that the July 13, 1994 letter was the final order. We found that unlike the minutes of the meeting, a letter does not record the votes of the individual board members and does not adequately reflect the board's official decision. We concluded that the trial court erred in dismissing the Snell's appeal as untimely filed.

{¶ 25} Here, Etna Township Zoning Regulation Section 506 provides that the board will issue a final order signed by all participating members. Etna Township Zoning Regulation Section 508 and 518 provide that an appeal from a decision must be made within 30 days of the approval of the minutes of the

hearing in which the board made its decision. The zoning regulations clearly provide that a letter giving notice of a decision is not the final, appealable order, but rather, the approval and signing of the minutes triggers the running of the time for appeal. We find that the notices of appeal were not filed late.

■ {¶ 26} In the alternative, appellees argue that Guttentag's notices of appeal were filed too early, because they were filed before any minutes of the April 16 hearing were approved and signed. A premature notice of appeal filed after the announcement of the decision, but before the entry of the judgment or order that begins the running of the appeal time, is treated as filed immediately after the entry. See App. R. 4.

{¶ 27} Each of Guttentag's assignments of error is sustained.

{¶ 28} Next we address case Nos. 07CA129 and 07CA131, which deal with whether Guttentag lacked standing to appeal the board of zoning appeals' decisions regarding the original permit. In 07–129 and 07–131, appellant raises two identical assignments of error:

{¶ 29} "I.   Does a trial court err in determining that appellant lacks standing because he has failed to participate in proceedings before a board of zoning appeals, when the appellant is already litigating the legitimacy of the project at issue?

{¶ 30} "II.   Does a trial court err in concluding that an appellant lacks standing because he has failed to participate in proceedings before a board of zoning appeals, when the appellant attends the adjudicatory hearing through counsel but has been forbidden by the board chairman to speak further concerning the project?"

{¶ 31} Again we address both assignments of error together.

## I and II

{¶ 32} A court has discretion to dismiss a case for lack of standing, and this court's review is limited to determining whether the trial court abused its discretion. See, e.g., *Natl. Amusements, Inc. v. Union Twp. Bd. of Zoning Appeals*, Clermont App. No. CA2002–12–107, 2003-Ohio-5434, 2003 WL 22326598, citing *Pembaur v. Leis* (1982), 1 Ohio St.3d 89, 1 OBR 125, 437 N.E.2d 1199. The Supreme Court has repeatedly held that the term "abuse of discretion" indicates that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Id., citing *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218.

■ {¶ 33} A party seeking to appeal bears the burden of proving that he or she has standing. See *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 591 N.E.2d 1203.

{¶ 34} In *Willoughby Hills,* the Supreme Court discussed the issue of standing at length. The Supreme Court noted that under common law, the right to appeal could be exercised only by parties who are able to demonstrate a present interest in the subject matter of the litigation and who have been prejudiced by the judgment of the lower court. Id. at 26, 591 N.E.2d 1203. The court held not only that the party whose requested variance was denied has standing, but the adjacent or contiguous property owners who opposed and participated in the administrative proceedings concerning the issue were equally entitled to seek appellate review. Id., citing *Roper v. Richfield Twp. Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, 173, 18 O.O.2d 437, 180 N.E.2d 591.

{¶ 35} The syllabus in *Roper* provides, "A resident, elector and property owner of a township, who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of a zoned area from residential to commercial, and advises the Board, on the record, that if the decision of the Board is adverse to him, he intends to appeal from the decision to a court, has a right of appeal to the common pleas court if the appeal if properly and timely made * * *."

{¶ 36} Appellees direct our attention to *Kraus v. Put–In–Bay Twp. Bd. of Zoning & Appeals,* Ottawa App. No. OT–04–011, 2004-Ohio-4678, 2004 WL 1949428. In *Kraus,* Dana Blumensaadt requested a conditional-use permit, a use-variance permit, and an area variance for her property. The board issued her a conditional-use permit. The Krauses' property was contiguous to Blumensaadt's and the Krauses opposed the first application for a conditional-use permit.

{¶ 37} Later, the board revoked the permit when Blumensaadt exceeded the scope of the permit. She then sought a second conditional-use permit. The Krauses, their attorney, and a court reporter attended the hearing on the first conditional-use permit. However, the Krauses did not participate in the hearing on the second permit application because they were living in their Florida home at the time. Instead, the Krauses submitted a letter opposing the permit.

{¶ 38} At the hearing, other neighboring home owners expressed support or opposition to Blumensaadt's applications. Some raised the same objections the Krauses had raised earlier. The board continued the matter for another hearing.

{¶ 39} At the second meeting, some members of the public attended but no one spoke in support or opposition. The board decided to issue the conditional-use permit. The Krauses filed a notice of appeal, and appellees moved to dismiss for lack of standing. The trial court overruled the motion to dismiss, finding that the Krauses had standing because they were adversely affected by the issuance of the permit, they had opposed the first application for the conditional-use permit, they could not attend the hearings because they did not live on the island in the winter, they had designated a representative who presented their reasons for

their opposition at the meeting, and the second meeting was merely a continuation of the first meeting.

{¶ 40} Ultimately, the trial court determined the merits of the case in favor of the Krauses. On appeal, however, the Sixth District Court of Appeals found that the Krauses did not have standing to appeal because they did not meet the requirements of *Roper*, supra. The Ottawa County Court of Appeals found that there were only two exceptions to the rule that the appealing party must have actively participated in the hearings and expressed his intent to appeal an unfavorable decision. The exceptions apply when there is insufficient notice of the hearing or when the board's decision differs from the request or goes beyond the board's authority. *Kraus*, 2004-Ohio-4678, 2004 WL 1949428, ¶ 16.

{¶ 41} Here, the trial court found that Guttentag lacked standing because he failed to participate in the proceedings before the board. Guttentag argues that *Kraus* should not apply here because his actions in litigating the legitimacy of the Wal–Mart project in the proceedings on the second permit give him standing to appeal the first permit dealing with the same project.

{¶ 42} Guttentag cites *Schomaeker v. First Natl. Bank of Ottawa* (1981), 66 Ohio St.2d 304, 20 O.O.3d 285, 421 N.E.2d 530, which held: "A person owning property contiguous to the proposed use who has previously indicated an interest in the matter by a prior court action challenging the use, and who attends a hearing on the variance together with counsel, is within that class of persons directly affected by the administrative decision and is entitled to appeal under R.C. Chapter 2506." Id. at paragraph two of the syllabus.

{¶ 43} The court in *Schomaeker* found that the property owner had standing to appeal because the order affected and determined her rights as a property owner, and she had previously indicated her interest, both by a prior challenge to the grant of a certificate of occupancy and by her presence with counsel at the hearing on the variance. Id. at 312, 20 O.O.3d 285, 421 N.E.2d 530. Here, the record does not demonstrate that Guttentag challenged the first permit before the board or that he owns property contiguous to the property at issue. Contrary to Guttentag's argument that he was represented by counsel at the hearing, we find that the record does not demonstrate that Guttentag's attorney entered an appearance on his behalf or otherwise indicated that he was representing Guttentag.

{¶ 44} Guttentag also argues that the parties in this action are all in privity, and so his participation in the proceedings on one permit gives him standing to participate in other proceedings involving the Wal–Mart project. He cites *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803.

{¶ 45} In *Agostinelli v. DeBartolo Realty Corp.* (Aug. 18, 1999), 7th Dist. No. 97CA227, 1999 WL 669518, several DeBartolo employees successfully sued the company for shares of stock they had earned but not received. Several years later, after the original suit was over, two other DeBartolo employees, O'Nesti and Zionts, who had not been parties to the original suit, demanded the shares they had been allocated but had not received. They argued that because the claims, facts, and issues in the prior case were identical to those in the new action, they were entitled to judgment as a matter of law based on res judicata and collateral estoppel. The court of common pleas and appellate court found that the two later employees were in privity with the employees in the first suit by virtue of their mutuality of interests, including their shared employment with DeBartolo and their shared participation in the stock-incentive plan. However, the Supreme Court disagreed.

{¶ 46} The Supreme Court found no privity between the *Agostinelli* employees and the *O'Nesti* employees because, although their causes of action were against the same employer, the employees' benefits in the two cases were different. Here, while the ultimate results could have been the same, the issues in the appeals are different, and we conclude that the parties are not in privity.

{¶ 47} Guttentag also argues that he was not notified of the proceedings, and thus, his failure to participate in the hearings was excused. See *Kraus* and *Alihassan v. Alliance Bd. of Zoning Appeals* (Dec. 18, 2000), Stark App. No. 1999CA00402, 2000 WL 1867737. However, pursuant to Etna Township Zoning Resolution Section 516, notice of the hearing appeared in the local newspaper, and only owners of property contiguous to the property in dispute require more specific notice.

{¶ 48} Guttentag suggests that the "party aggrieved" standard governs those persons who have the right to appeal to a board of zoning appeals, not persons who have the right to appeal from the board of zoning appeals. We find that this is a distinction without a difference.

{¶ 49} Finally, Guttentag points out that *Roper*, 173 Ohio St. 168, 18 O.O.2d 437, 180 N.E.2d 591, discusses the need for courts to supervise the decisions of administrative agencies, and the requirements for standing should allow for this. We find that the *Roper*, *Schomaeker*, and *Willoughby Hills* cases all set out the Supreme Court's requirements for standing to appeal, and this court cannot expand on them. We find that Guttentag did not have standing to bring this appeal to the common pleas court, and the court did not err in dismissing it.

{¶ 50} Both of Guttentag's assignments of error are overruled.

{¶ 51} For the foregoing reasons, the judgments of the Court of Common Pleas of Licking County in case Nos. 07CA129 and 07CA131 are affirmed. The court's

decision in case No. 07CA130 is reversed, and the cause is remanded to the trial court for further proceedings in accord with law and consistent with this opinion.

Judgment accordingly.

HOFFMAN, P.J., and WISE, J., concur.